FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID TOURGEMAN, *Plaintiff-Appellant*, | No. 12-56783 |
| v. | D.C. No. 3:08-cv-01392-CAB-NLS |
| COLLINS FINANCIAL SERVICES, INC., DBA Precision Recovery Analytics, Inc., a Texas corporation; NELSON & KENNARD, a partnership; PARAGON WAY, INC.; COLLINS FINANCIAL SERVICES USA, INC., *Defendants-Appellees*, | OPINION |
| and | |
| DELL FINANCIAL SERVICES, LP, *Defendant*. | |

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted
April 9, 2014—Pasadena, California

Filed June 25, 2014

Before: Jerome Farris and Andrew D. Hurwitz, Circuit Judges, and Paul L. Friedman, District Judge.[*]

Opinion by Judge Friedman;
Dissent by Judge Farris

---

## SUMMARY[**]

---

### Fair Debt Collection Practices Act

The panel reversed the district court's summary judgment in favor of the defendants in a class action under the Fair Debt Collection Practices Act.

The panel held that the plaintiff had Article III standing to assert claims based on collection letters that he did not receive because the alleged violation of his statutory right not to be the target of misleading debt collection communications constituted a cognizable injury. The panel also held that the plaintiff had a statutory cause of action under the FDCPA.

The panel reversed the district court's summary judgment on claims that the defendants violated § 1692e of the FDCPA by misidentifying the plaintiff's original creditor in a series of collection letters sent to him, as well as in a complaint filed against him in state court. The panel held that the letters and

---

[*] The Honorable Paul L. Friedman, District Judge, U.S. District Court for the District of Columbia, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the complaint were materially misleading, and that the plaintiff was entitled to judgment under § 1692e(2) and (10).

Dissenting, Judge Farris wrote that he would affirm the district court's judgment.

## COUNSEL

Brett M. Weaver (argued), Johnson & Weaver, LLP, San Diego, California, and Daniel P. Murphy, Law Offices of Daniel Murphy, San Diego, California, for Plaintiff-Appellant.

Tomio B. Narita (argued) and Jeffrey A. Topor, Simmonds & Narita LLP, San Francisco, California, for Defendant-Appellee Nelson & Kennard.

No appearance for Defendants-Appellees Collins Financial Services, Inc., Collins Financial Services USA, Inc., or Paragon Way, Inc.

## OPINION

FRIEDMAN, District Judge:

This is a class action brought under the Fair Debt Collection Practices Act ("FDCPA" or "the Act"), 15 U.S.C. § 1692 *et seq.* Plaintiff David Tourgeman contends that the defendants — Collins Financial Services, Inc.; Paragon Way, Inc.; Nelson & Kennard; and Collins Financial Services USA, Inc. — made false representations to him in connection with

their efforts to collect a purported debt.[1]      Specifically, Tourgeman argues that the defendants violated the Act by misidentifying his original creditor in a series of collection letters sent to him, as well as in a complaint filed against him in state court.  He also maintains that one defendant, Nelson & Kennard, misleadingly represented that its collection letter was from an attorney when, on Tourgeman's account of the facts, no attorney had been "meaningfully involved" in evaluating his case.  The district court granted summary judgment to the defendants.  We have jurisdiction under 28 U.S.C. § 1291.  We now reverse and hold that judgment should be entered for Tourgeman.

## I.  BACKGROUND

David Tourgeman bought a Dell computer.  At the time of the purchase, Tourgeman resided in Mexico, and he ordered the computer to be shipped to his parents' home in California.  He financed the purchase through Dell Financial Services, which arranged for a loan to be originated by CIT Online Bank.    Dell Financial then serviced the loan. According to Tourgeman, he completed repayment within two years of buying the computer.  But Dell Financial's records reflected otherwise.    Tourgeman's allegedly outstanding debt therefore was charged off and then sold,

---

[1] Tourgeman serves here as the named plaintiff on behalf of a class of consumers similarly situated.  This appeal resolves the essential legal question that underlies Tourgeman's and the class's claims under one section of the FDCPA, 15 U.S.C. § 1692e.  For ease of reference, we refer only to plaintiff Tourgeman rather than to the class.

along with more than 85,000 other Dell Financial debts, to Collins Financial Services.[2]

Collins transferred Tourgeman's file along with the other Dell Financial accounts to Collins's affiliated collection agency, Paragon Way, Inc., which mailed three letters to Tourgeman encouraging him to pay off the purported debt. Collins then referred the file to the law firm of Nelson & Kennard, which sent its own dunning letter to Tourgeman. All of these letters were mailed to addresses in California at which Paragon and Nelson & Kennard believed Tourgeman might reside. In fact, the addresses belonged to Tourgeman's parents, and Tourgeman himself remained resident in Mexico. After receiving no response to the letters, Nelson & Kennard filed a complaint on behalf of Collins in San Diego County Superior Court. Tourgeman retained counsel, and Nelson & Kennard eventually elected to dismiss the action. It was during this state court litigation that Tourgeman learned of the several letters that had been mailed to him at his parents' addresses. *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2011 WL 3176453, at \*6 (S.D. Cal. July 26, 2011).

Tourgeman then went on the offensive. He filed this lawsuit in federal district court, alleging that Collins, Paragon Way, and Nelson & Kennard had violated the FDCPA, as well as California law, in their efforts to collect the purported

---

[2] It is immaterial to this appeal whether Tourgeman actually had paid his loan in full; none of his FDCPA claims depends on the validity of the debt.

debt from him.**³** Tourgeman's complaint survived motions to dismiss filed by the several defendants, *see id.*, and the district court later certified a class of consumer plaintiffs, *see Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 1327824, at *4–10 (S.D. Cal. Apr. 17, 2012). But upon the defendants' motions for summary judgment and Tourgeman's cross-motion, the court granted judgment to the defendants. *See Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-cv-1392, 2012 WL 3731807 (S.D. Cal. Aug. 29, 2012).

On appeal, Tourgeman makes two claims under the FDCPA. His main claim arises from the fact that the defendants — both in their letters and in the state court complaint — falsely identified his original creditor as "American Investment Bank, N.A.," when, in actuality, CIT Online Bank originated the loan. Tourgeman contends that this misidentification violated the Act's prohibition on the "use [of] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Tourgeman's second claim relates to the letter sent to him by the law firm of Nelson & Kennard. He argues that the attorney who signed the letter had not been "meaningfully involved" in evaluating his case, and that the letter therefore runs afoul of 15 U.S.C. § 1692e(3), which proscribes "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." Tourgeman seeks only statutory damages,

---

**³** Tourgeman also sued Dell Financial, with which he later settled; that entity is not therefore involved in this appeal. Collins and Paragon Way have elected neither to file briefs nor to offer argument on this appeal, but we nonetheless are obligated to review the record in full. *See Brown Bag Software v. Symantec, Corp.*, 960 F.2d 1465, 1478 (9th Cir. 1992). In any event, Nelson & Kennard offers arguments equally applicable to the letters sent by Paragon Way.

conceding that he suffered no pecuniary loss as a result of the defendants' conduct.

## II.  STANDING

Nelson & Kennard first argues that Tourgeman lacks both statutory and Article III standing to assert any claims based on the collection letters, which Tourgeman admittedly never received when they were sent.  The law firm contends that the FDCPA does not provide a cause of action to a consumer in Tourgeman's position, notwithstanding the statute's broad language providing that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person."  15 U.S.C. § 1692k(a).  Nelson & Kennard further maintains that even if the FDCPA does purport to endow such consumers with a cause of action, Article III would forbid it, because consumers who never receive the offending communication have suffered no injury in fact.  Tourgeman's position is that a violation of the FDCPA "in and of itself [] confers Article III standing."

### A.  Article III Standing

"Article III of the Constitution limits federal-court jurisdiction to 'Cases' and 'Controversies.'" *Massachusetts v. E.P.A.*, 549 U.S. 497, 516 (2007).  The requirement of standing flows from this limitation. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing doctrine assures that "the litigant is entitled to have the court decide the merits of the dispute or of particular issues," *Warth v. Seldin*, 422 U.S. 490, 498 (1975), by demanding that he or she "possess a 'direct stake in the outcome' of the case," *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013)

(quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).

To possess standing, a plaintiff must have suffered an "injury in fact," meaning "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal citations and quotation marks omitted). In addition, "there must be a causal connection between the injury and the conduct complained of . . . [and] it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal citations and quotation marks omitted).

"The . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 578 (quoting *Warth*, 422 U.S. at 500); *see also Massachusetts*, 549 U.S. at 516 ("Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment))) (internal quotation marks omitted). In cases involving statutory rights, "the particular statute and the rights it conveys [] guide the standing determination." *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 178 (2d Cir. 2012); *see also Hammer v. Sam's East, Inc.*, ___ F.3d ___, 2014 WL 2524534, at *4 & n.3 (8th Cir. June 5, 2014) (noting that "the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*"); *Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1212 (10th Cir. 2006) (where a court is "dealing with legal rights created by Congress under the FDCPA . . . the 'injury in fact' analysis for purposes of Article III is directly linked to the

question of whether [the plaintiff] has suffered a cognizable statutory injury"). As the Supreme Court has explained, "[e]ssentially, the standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500. For this reason, "the violation of a statutory right is usually a sufficient injury in fact to confer standing." *Robins v. Spokeo, Inc.*, 742 F.3d 409, 412 (9th Cir. 2014).

At the same time, "the requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009). Thus, there are limits on Congress's ability to elevate to the status of legally cognizable injuries particular types of harm that were previously not recognized in law. *Lujan*, 504 U.S. at 578. As this court has observed, there are "two constitutional limitations on congressional power to confer standing." *Robins*, 742 F.3d at 413. "First, a plaintiff 'must be among the injured, in the sense that she alleges the defendants violated *her* statutory rights.'" *Id.* (quoting *Beaudry v. TeleCheck Servs., Inc.*, 579 F.3d 702, 707 (6th Cir. 2009)) (internal quotation marks omitted). "Second, the statutory right at issue must protect against 'individual, rather than collective, harm.'" *Id.* (quoting *Beaudry*, 579 F.3d at 707).

The second limitation poses no problem in this case. The personal interest in not being "the object of a misrepresentation made unlawful [by statute]," *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982), assuredly is an "individual, rather than collective, harm," *Beaudry*, 579 F.3d at 707 (internal quotation marks omitted). The gravamen of Nelson & Kennard's argument, rather, is that Tourgeman is

not truly "among the injured." That is, it contends that Tourgeman has not suffered the "actual" injury required by Article III because he never received any letter that contained the allegedly misleading representations. According to Nelson & Kennard, a consumer who never receives a dunning letter can suffer neither pecuniary nor emotional harm, nor can such a consumer be hindered in deciding how to respond to the effort to collect the debt.

The Supreme Court's decision in *Havens Realty Corp. v. Coleman*, however, makes clear that such pecuniary or emotional harms are not necessary to a finding of injury in fact. In *Havens*, the Court held that an African-American "tester" —who, by posing as an apartment hunter, aimed to ferret out violations of the Fair Housing Act ("FHA") — possessed standing to bring suit based on the defendants' falsely telling her that no apartments in a particular housing complex were available, even though the tester had no intention of actually renting an apartment from the defendant and, indeed, may well have "fully expect[ed] that he would receive false information." 455 U.S. at 374. The Court concluded that the "alleged injury to [the plaintiff's] statutorily created right to truthful housing information" was a cognizable injury in and of itself — regardless of whether the plaintiff actually hoped to reside in the defendant's housing complex — and therefore "the Art. III requirement of injury in fact [was] satisfied." *Id.* at 374 (citing *Warth*, 422 U.S. at 500). The tester plaintiff possessed standing not because she had been "deprived . . . of the benefits that result from living in an integrated community," *id.* at 375, but simply because her "statutorily created right to truthful housing information" had been infringed, *id.* at 374–75.

Similarly, we have held that where a home buyer is referred by her settlement agent to a particular title insurer as a result of a kickback deal between the agent and the insurer, the consumer suffers Article III injury even though she paid no more for the insurance than she otherwise would have. *Edwards v. First Am. Corp.*, 610 F.3d 514, 517–18 (9th Cir. 2010), *cert. granted in part*, 131 S. Ct. 3022 (2011), *cert. dismissed as improvidently granted*, 132 S. Ct. 2536 (2012) (per curiam); *accord Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 762–63 (3d Cir. 2009) (recognizing that because Article III injury can be predicated on the violation of statutory rights, "[a] plaintiff need not demonstrate that he or she suffered actual monetary damages"); *Carter v. Welles-Bowen Realty, Inc.*, 553 F.3d 979, 989 (6th Cir. 2009) ("Just as a violation of the rights of 'testers' to receive 'truthful information' supports standing, so does a violation of the right to receive referrals untainted by conflicts of interest." (quoting *Havens*, 455 U.S. at 373–74)). More recently, we concluded that an individual had standing to sue a website operator that allegedly had published inaccurate information about him, regardless of whether the plaintiff had suffered any financial or emotional harm as a consequence. *See Robins*, 742 F.3d at 412–14; *accord Beaudry*, 579 F.3d at 707; *see also In re Zynga Privacy Litig.*, ___ F.3d ___, 2014 WL 1814029, at *5 n.5 (9th Cir. May 8, 2014) (affirming Article III standing based on Facebook user's interest in maintaining the privacy of her online identification and URL information). In cases involving a variety of other federal statutes, courts regularly have held that the absence of pecuniary loss is no bar to Article III standing, if the plaintiff has alleged a violation of the rights conferred by statute. *See, e.g.*, *Hammer*, 2014 WL 2524534, at *3–4 (action under Fair and Accurate Credit Transactions Act); *Donoghue*, 696 F.3d at 174–80 (action under section 16(b) of Securities Exchange

Act); *Robey*, 434 F.3d at 1211–12 (action under FDCPA); *DeMando v. Morris*, 206 F.3d 1300, 1303 (9th Cir. 2000) (action under Truth in Lending Act).

Although Tourgeman could not have suffered any pecuniary loss or mental distress as the result of a letter that he did not encounter until months after it was sent — when related litigation was already underway — the injury he claims to have suffered was the violation of his right not to be the target of misleading debt collection communications. The alleged violation of this statutory right — like those rights at issue in *Havens*, *Robins*, and the other cases that we have noted — constitutes a cognizable injury under Article III. And "[w]hen the injury in fact is the violation of a statutory right that we inferred from the existence of a private cause of action, causation and redressability" — the two other elements of standing — "will usually be satisfied." *Robins*, 742 F.3d at 414. Such is the case here. The alleged violation of Tourgeman's statutory rights stems solely from the defendants' having mailed to him their collection letters, and that injury would be redressed by an award of statutory damages, which the FDCPA makes available to prevailing consumers. *See* 15 U.S.C. § 1692k(a)(2) (providing for "additional damages"). We conclude, therefore, that Tourgeman has constitutional standing.

## B. Statutory Standing

Satisfied that Article III of the Constitution would not bar Congress from creating a private cause of action for a consumer in Tourgeman's position, we now turn to ask whether Congress actually has done so in the FDCPA. We

start with the text of the statute.[4]  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 & n.4 (2014); *United States v. Johnson*, 680 F.3d 1140, 1144 (9th Cir. 2012).   The FDCPA provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person."   15 U.S.C. § 1692k(a).   And the substantive provision that Tourgeman alleges was violated states that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  *Id.* § 1692e.  The question, then, is whether the "use [of] any false, deceptive, or misleading representation . . . with respect to any person" entails a corollary requirement that the person to whom the representation was addressed actually have received it.

The statute's text imposes no such requirement.  Still, it is not unreasonable for Nelson & Kennard to contend that the very concept of a "representation" contemplates the presence of two parties: the party making the representation and the party to whom it is made.  *See, e.g.*, WEBSTER'S THIRD NEW INT'L DICTIONARY 1926 (1993) (defining "represent" as meaning, *inter alia*, "to set forth or place *before someone* (as by statement, account, or discourse)," and "[to] exhibit (a fact) *to another* mind in language" (emphases added)); BLACK'S LAW DICTIONARY 1415 (9th ed. 2009) (defining "representation" as meaning, *inter alia*, "[a] presentation of fact — either by words or by conduct — made to induce

---

[4] As the Supreme Court recently noted, what the courts have sometimes called "statutory standing" is perhaps better addressed by asking whether Congress has created by a particular statute a cause of action in which a class of plaintiffs is authorized to sue. *Lexmark*, 134 S. Ct. at 1387–88 & n.4.

*someone* to act . . . [especially] the manifestation *to another* that a fact, including a state of mind, exists" (emphases added)).  But these definitions do not speak to the nature of the intended recipient's role in the transaction, and the statutory text itself is aimed squarely at the debt collector's conduct, rather than at its effect on the consumer.  *See* 15 U.S.C. §§ 1692e & k(a) (proscribing the "*use* [of] any false, deceptive, or misleading representation . . . with respect to any person" (emphasis added)).  A debt collector who addresses a misleading dunning letter to a consumer as a means of collecting that consumer's debt "use[s]" an unlawful practice "with respect to" the consumer, regardless of whether some interceding condition — such as non-receipt of the letter, or the consumer's failure to read it, or the fact that the consumer is savvy enough not to be misled by it — renders the practice ineffective.

The manner in which the majority of courts have applied the FDCPA aligns with this construction of the statute.  To begin with, a consumer possesses a right of action even where the defendant's conduct has not caused him or her to suffer any pecuniary or emotional harm.  *E.g.*, *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1083 (7th Cir. 2013); *Robey*, 434 F.3d at 1212; *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 307 (2d Cir. 2003); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780–81 (9th Cir. 1982).  An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the *hypothetical* "least sophisticated debtor" likely would be misled.  *E.g.*, *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 & n.2 (9th Cir. 2011); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997).  This inquiry is objective and is undertaken as a matter of law. *Gonzales*, 660 F.3d at 1061.  In addition, by making available

to prevailing consumers both statutory damages and attorneys' fees, Congress "clearly intended that private enforcement actions would be the primacy enforcement tool of the Act." *Baker*, 677 F.2d at 780–81 (citing elements of the FDCPA's legislative history); *see also Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) ("The FDCPA is a consumer protection statute and was intended to permit, even encourage, attorneys like [plaintiffs' class counsel] to act as private attorney generals to pursue FDCPA claims."); *Gonzales*, 660 F.3d at 1061 (noting that "Congress encouraged private enforcement [of the FDCPA] by permitting aggrieved individuals to bring suit as private attorneys general" (citing *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008))).

These interlocking statutory features demonstrate that Congress intended to achieve its goal of regulating debt collectors' conduct by motivating consumers to bring enforcement actions if they are the targets of unlawful collection efforts. And the Act's broad regulatory purpose is effectuated by measuring the lawfulness of a debt collector's conduct not by its impact on the particular consumer who happens to bring a lawsuit, but rather on its likely effect on the most vulnerable consumers — the hypothetical "least sophisticated debtor" — in the marketplace. *See, e.g.*, *Gonzales*, 660 F.3d at 1061. In addition, "[b]ecause the FDCPA . . . is a remedial statute, it should be construed liberally in favor of the consumer." *Clark v. Capital Credit & Collection Servs. Inc.*, 460 F.3d 1162, 1176 (9th Cir. 2006) (quoting *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)) (omission in original). This rule of construction fortifies our conclusion that a consumer such as Tourgeman, who did not actually receive a dunning letter directed toward

him at the time it was sent, nonetheless may bring an action challenging the lawfulness of that letter under the Act.

For these reasons, Tourgeman has both Article III standing and a statutory cause of action under the FDCPA.[5]

## III.  CLAIMS UNDER THE FDCPA

We turn now to the merits of Tourgeman's claims, which require that we determine whether the defendants' communications were "misleading" under section 1692e of the FDCPA.  Although Tourgeman levels the same basic charge against all defendants — that his original creditor, CIT Online Bank, was falsely identified to be American Investment Bank — there are a few distinctions between the various challenged documents and these differences warrant dividing our separate discussion of them.  We first address the Paragon Way letters, then the complaint drafted by Nelson & Kennard and filed against Tourgeman in California state court, and conclude with the letter sent by Nelson & Kennard.  We exercise de novo review over a grant or denial of summary judgment.  *Evon*, 688 F.3d at 1023–24.  This court also "reviews a district court's interpretation of the FDCPA de novo."  *Id.* at 1024.

---

[5] We also reject Nelson & Kennard's contention that Tourgeman's claims based on the letters are time-barred.  The district court appropriately concluded that "the first time that [Tourgeman] reasonably could have become aware of the allegedly false and misleading representations in Defendants' letters was when his father was served with summons and complaint in the state court lawsuit in October 2007," after which litigation discovery revealed the existence of the collection letters.  *Tourgeman*, 2011 WL 3176453, at *6; *see also Magnum v. Action Collection Serv., Inc.*, 575 F.3d 935, 939–41 (9th Cir. 2009) (holding that discovery rule applies in FDCPA actions).

The FDCPA "comprehensively regulates the conduct of debt collectors," and "is a strict liability statute." *Gonzales*, 660 F.3d at 1060–61; *see also Clark*, 460 F.3d at 1174–77 (concluding that the FDCPA holds debt collectors strictly liable). Section 1692e therefore "broadly prohibits the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Gonzales*, 660 F.3d at 1061 (quoting 15 U.S.C. § 1692e). The section also provides a non-exhaustive list of sixteen practices that violate this general prohibition; Tourgeman relies on three of the subsections: 1692e(2)(A), proscribing the "false representation of the character, amount, or legal status of any debt"; 1692e(3), prohibiting the "false representation or implication that any individual is an attorney or that any communication is from an attorney"; and 1692e(10), forbidding the "use of any false representation or deceptive means to collect or attempt to collect any debt."

"In this circuit, a debt collector's liability under § 1692e of the FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. The analysis is objective and "takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Id.* (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Id.* (quoting *Terran*, 109 F.3d at 1432). "Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable." *Evon*, 688 F.3d at 1027.

In addition, "[i]n assessing FDCPA liability, we are not concerned with mere technical falsehoods that mislead no

one, but instead with genuinely misleading statements that may frustrate a consumer's ability to intelligently choose his or her response." *Donohue*, 592 F.3d at 1034. In other words, a debt collector's false or misleading representation must be "material" in order for it to be actionable under the FDCPA. *Id.* at 1033. "The purpose of the FDCPA, 'to provide information that helps consumers to choose intelligently,' would not be furthered by creating liability as to immaterial information because 'by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect).'" *Id.* (quoting *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757–58 (7th Cir. 2009)). Thus, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under [section] 1692e." *Id.*

## A.  Paragon Way Letters

Paragon Way mailed three letters to Tourgeman that falsely identified his original creditor as "American Investment Bank, N.A.," when in fact CIT Online Bank originated his loan. The letters also displayed an "Original Account #" that did not match Tourgeman's original CIT loan number. The first two of these letters, however, did include a "Description" line item that stated, "Dell Computer Corporation." The question presented is whether this combination of features — in particular, the letters' misidentification of Tourgeman's original creditor —

rendered these letters materially misleading under section 1692e.[6]

Tourgeman contends that these false statements could lead a consumer to reach any number of incorrect understandings about the nature of the predicament he or she faces. For example, the consumer might be concerned that the erroneous information is indicative of an attempted fraud. Or the consumer might assume that because the letter seeks to collect a debt that evidently does not belong to him, the letter can safely be disregarded. Alternatively, the consumer might be concerned that if he responds to the letter by paying the amount demanded, he will later receive another letter from a different debt collector attempting to collect the same debt. Tourgeman contends that because each of these beliefs about the nature of the situation is just as reasonable as the

---

[6] Tourgeman places little emphasis on the presence in the letters of an incorrect account number. At oral argument, his counsel simply stated that the unfamiliar account number made the letters "doubly confusing." Counsel for Nelson & Kennard, in his argument, maintained that any claim made on the basis of the account number had not been pled in Tourgeman's complaint, and had only been raised on appeal. But the district court clearly considered this factual allegation in its decision on summary judgment. *See Tourgeman*, 2012 WL 3731807, at *3.

In any event, we conclude that the misidentification of the original creditor is independently sufficient to constitute a violation of the Act. Although the incorrect account number certainly compounds the violation, we do not determine whether that particular false statement, standing alone, would be sufficient to violate the FDCPA.

one true understanding, he has been misled or deceived within the meaning of the Act.[7]

Nelson & Kennard maintains that despite the erroneous identification of Tourgeman's original creditor, the references to Dell in the first two Paragon Way letters were sufficient to tip off even the least sophisticated debtor about the subject matter of the collection effort. And a consumer genuinely puzzled by the mention of American Investment Bank, need only have picked up the phone to call for more information or to dispute the debt. Thus, says Nelson & Kennard, because the consumer's ability to intelligently respond to the letters would not have been adversely affected by the incorrect information, the false statements were not "material," and consequently Paragon Way did not violate the Act.

In *Donohue*, we held that a defendant's mislabeling of a portion of a debt as "interest . . . of 12%" — when in fact the sum "included pre-finance charges and interest" — did not violate section 1692e because the statement's falsity "did not undermine Donohue's ability to intelligently choose her action concerning her debt." *Id.* at 1034. We relied on the Seventh Circuit's decision in *Hahn*, which involved comparable facts. *See* 557 F.3d at 757 ("[T]he difference between principal and interest is no more important to the

---

[7] Tourgeman also argues that summary judgment should not have been granted to Collins and Paragon Way in light of deposition testimony given by Walt Collins, the founder and former CEO of Collins Financial Services, in which Mr. Collins opined that the misidentification of Tourgeman's original creditor violated the FDCPA. This line of argument is foreclosed by our precedents, in which we have recognized that "we are not bound by a witness's opinions about the law." *Miller v. Clark Cnty.*, 340 F.3d 959, 963 n.7 (9th Cir. 2003); *see also McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999).

Fair Debt Collection Practices Act than the color of the paper that [the creditor] used."); *see also Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009) ("[Plaintiff] can't win simply by showing that [the debt collector's] use of the term 'principal balance' is false in a technical sense; she has to show that it would mislead the unsophisticated consumer.").

By contrast, in *Lox v. CDA, Ltd.*, 689 F.3d 818 (7th Cir. 2012), the court concluded that the statement that a tribunal could award attorneys' fees payable by the consumer — when, in fact, such an outcome was a legal impossibility — was a material misrepresentation because, for the consumer who believed that were the case, such a fact "would have undoubtedly been a factor in his decision-making process, and very well could have led to a decision to pay a debt that he would have preferred to contest." *Id.* at 827. And the Sixth Circuit has held that a consumer's allegations that she endured "confusion and delay in trying to contact the proper party concerning payment on her loan and resolution of [her] problem," which allegedly was caused by the defendant's false statement that a particular bank held her mortgage note, sufficiently stated a claim under the court's FDCPA materiality standard. *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 327–28 (6th Cir. 2012).

We are persuaded that, in the context of debt collection, the identity of a consumer's original creditor is a critical piece of information, and therefore its false identification in a dunning letter would be likely to mislead some consumers in a material way. Unlike mislabeling portions of a total debt as principal rather than interest — literally false, but meaningful only to the "hypertechnical" reader, *see Wahl*, 556 F.3d at 645 — the factual errors in Paragon Way's letters

to Tourgeman could easily cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort. *See Donohue*, 592 F.3d at 1034 (a false statement violates the FDCPA if it "may frustrate a consumer's ability to intelligently choose his or her response").[8]

The debtor who takes Paragon Way's letters at face value — either because he does not remember the details concerning his financing of a computer bought several years beforehand, or perhaps because he never knew the identity of his original creditor to begin with — might engage in a fruitless attempt to investigate the facts of this non-existent debt, in a responsible effort to determine how to most effectively respond to the collection notice. This debtor might, quite reasonably, contact American Investment Bank to obtain background information so that he can remember what had earlier transpired, or to obtain any records that the bank holds pertaining to his debt so that he can prove he already had paid it off, if he believes such is the case. But, of course, American Investment Bank would have no record of a loan agreement; and the unknown account number certainly is of no help in getting to the bottom of things. Even if the

---

[8] The district court was "not persuaded that the misidentification of the original creditor, or the account number, in this case would 'frustrate a consumer's ability to intelligently choose his or her response,'" because "the least sophisticated debtor would not have recognized the original creditor, or account number, even if they had been correctly identified in the first instance." *Tourgeman*, 2012 WL 3731807, at *5 (quoting *Donohue*, 592 F.3d at 1034). This approach, however, defeats the purpose of the least sophisticated debtor standard, which is to "ensure that the FDCPA protects *all* consumers, the gullible *as well as* the shrewd." *Clark*, 460 F.3d at 1171 (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)) (alteration omitted) (emphases added).

consumer eventually finds his way to learning that the letter referred to the Dell debt he had incurred with CIT Online Bank, the delay already would have cost him some portion of the thirty days that the FDCPA grants to consumers before having to respond to a collection notice, lest the debt collector be entitled to assume the validity of the debt. *See* 15 U.S.C. § 1692g. And such "confusion and delay in trying to contact the proper party concerning payment on [the] loan" is precisely the kind of infringement of the consumer's best interests that the FDCPA seeks to combat. *Wallace*, 683 F.3d at 327.[9]

By ensuring that consumers are fully and truthfully apprised of the facts and of their rights, the FDCPA enables them "to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Clark*, 460 F.3d at 1171; *see also Donohue*, 592 F.3d at 1033 ("The purpose of the FDCPA [is] 'to provide information that helps consumers to choose

---

[9] Debt collectors must not make representations that tend to lead consumers to forego the valuable rights granted to them by the Act. *See, e.g.*, *Easterling v. Collecto, Inc.*, 692 F.3d 229, 235 (2d Cir. 2012) (collection letter violated section 1692e due to its "capacity to discourage debtors from fully availing themselves of their legal rights"); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34–36 (2d Cir. 1996) (collection letters violated both sections 1692g and 1692e(10) by employing language that would tend to make consumer "uncertain as to her rights" to enjoy thirty-day period within which to dispute debt or demand validation from debt collector); *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225–26 (9th Cir. 1988) (per curiam) (debt collector violated section 1692g by overshadowing notice of thirty-day period by including language that "promis[ed] harm to the debtor who waits beyond 10 days").

intelligently.'" (quoting *Hahn*, 557 F.3d at 757–58)).[10]
Paragon Way's false representations would likely mislead
consumers in a manner that deprives them of their right to
enjoy these benefits. We therefore hold that these letters
contained materially misleading statements that trigger
liability under section 1692e of the Act. Accordingly, the
appellant is entitled to judgment on his claims against
Paragon Way under subsections 1692e(2) and e(10).

Nelson & Kennard repeatedly suggests that a perplexed
consumer could simply place a phone call to the debt
collector to clear up any confusion. But for many consumers
— particularly those who do not even recognize that they
have encountered false information — making such a call
likely would not be their first reaction to the letter, nor does
the FDCPA require that it be so. As we have previously
explained, "consumers are under no obligation to seek
explanation of confusing or misleading language in debt
collection letters." *Gonzales*, 660 F.3d at 1062 (citing *Fields
v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004)).
Indeed, Nelson & Kennard's argument, taken to its furthest
reach, would transform many of the FDCPA's substantive
provisions into surplusage, converting any dunning letter
bearing a return address and phone number into a

---

[10] Nelson & Kennard may be correct that the FDCPA does not *require*
that the original creditor be identified in collection letters sent to
consumers — but where a debt collector *has* chosen to identify the
original creditor, and has done so inaccurately, the false representation
would likely thwart a consumer's ability to freely navigate a course of
action in response to the collection notice. Congress's recognition in the
FDCPA that this information is important — even if not so essential that
debt collectors *must* disclose it without first being asked, *see* 15 U.S.C.
§ 1692g(a)(5) — supports the conclusion that its false provision could
have this type of detrimental impact on the consumer.

communication not misleading by virtue of those features. *See Fields*, 383 F.3d at 566 (noting that the Seventh Circuit has "rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call"). Interpreting materiality in such a fashion would gut the FDCPA's prohibition of misleading representations, and "[w]e must avoid a construction which renders any language of the enactment superfluous." *Security Pac. Nat'l Bank v. Resolution Trust Corp.*, 63 F.3d 900, 904 (9th Cir. 1995).

## B. State Court Complaint

We next address the complaint prepared by Nelson & Kennard and filed against Tourgeman in California state court, which Nelson & Kennard delivered directly to Tourgeman's father, who then transmitted it to his son in Mexico. *Tourgeman*, 2012 WL 3731807, at \*2, \*8–9.[11] Because the one material aspect of this complaint is the same as that which renders Paragon Way's letters misleading — namely, the inclusion of erroneous references to American Investment Bank — the preceding discussion applies with equal force to this document. The complaint presented the information in a somewhat different format, however; the body of the complaint twice referred to a loan agreement between American Investment Bank and Tourgeman. Attached to the complaint was a blank exemplar of such an

---

[11] In *Donohue*, this court held that a complaint that is served directly on a consumer qualifies as a "communication" that is subject to the strictures of section 1692e. 592 F.3d at 1031–32. At least one court has gone further and concluded that a complaint that is merely filed, but not actually served, also can give rise to liability under the FDCPA. *Phillips*, 736 F.3d at 1082–83.

agreement between the bank and a Dell Computer customer, which featured the logos of both American Investment Bank and Dell. Although the complaint lacked any reference to the erroneous account number, based on the reasoning of the preceding section of this opinion, we necessarily conclude that Nelson & Kennard violated the Act by transmitting this complaint to Tourgeman.

Furthermore, a consumer could be harmed by a complaint — as opposed to a dunning letter — in ways distinct yet equally problematic as those we have already discussed. For example, the consumer who engages legal counsel might be unable to accurately apprise the lawyer of the relevant circumstances, potentially leading to lost opportunities to settle the debt. And the stakes are undoubtedly higher when the consumer faces the possibility of a default judgment rather than the mere continuation of collection attempts.

## C.  Nelson & Kennard Letter

Finally, we come to the letter mailed to Tourgeman by Nelson & Kennard. That letter informed him that the firm's client, Collins Financial Services, "ha[d] forwarded [his] account to this office with instructions that we take appropriate action to effect collection of the above-referenced balances due." The Nelson & Kennard letter did not mention Dell. It did reference "American Investment Bank, N.A.," but, unlike the Paragon Way letters, it did not label the bank as Tourgeman's "original creditor." Rather, both the bank's name and the same incorrect account number that appeared in Paragon's letters were placed in a "Re:" line item atop the body of the letter. There was no explanation as to the meaning or significance of these pieces of information.

Nelson & Kennard argues that the absence of a label informing Tourgeman that American Investment Bank was the original creditor somehow makes the letter less misleading than those sent by Paragon Way, because the original creditor was not "misidentified." On the contrary, Nelson & Kennard's letter gives the least sophisticated debtor even less of a clue as to how to investigate the claim being made against him, making it more likely that the consumer will waste valuable time and suffer confusion in his efforts to formulate a response. Nelson & Kennard also emphasizes that its letter does correctly identify Tourgeman's current creditor — Collins Financial Services — but, in fact, the letter simply states that Collins is the firm's "client." By contrast, Paragon Way's letters clearly describe Collins as Tourgeman's "current creditor." Because the Nelson & Kennard letter does not describe who American Investment Bank purports to be, and as one cannot assume that the least sophisticated debtor understands that the firm's "client" — Collins Financial Services — is the entity to whom he currently owes money, the consumer might very well think that the letter concerns a debt currently owned by American Investment Bank. Such a misunderstanding could further impede the consumer's ability to exercise his rights under the FDCPA.

Nelson & Kennard also argues that because its letter came on the heels of the letters sent by Paragon Way — two of which mentioned Dell Computer Corporation — a consumer in Tourgeman's position would know what the letter concerned and therefore would not be misled by the absence of any reference to Dell. We need not decide whether there may be some circumstances in which it would be appropriate, in determining a dunning letter's tendency to mislead, to consider the consumer's receipt of earlier letters sent by a

different debt collector.  As we already have explained, Paragon Way's letters were materially misleading notwithstanding having included references to Dell.  The fact that Tourgeman had been sent the misleading Paragon Way letters therefore does not help Nelson & Kennard.

Tourgeman also advances an independent ground for finding that Nelson & Kennard's dunning letter violated the FDCPA.  He alleges that the lawyer who signed the Nelson & Kennard letter was not "meaningfully involved" in the evaluation of Tourgeman's case before sending a letter on law firm letterhead.  The "meaningful involvement doctrine" — to which this court has once referred in passing, *see Gonzales*, 660 F.3d at 1063, but which we have never squarely adopted — grows out of the language in 15 U.S.C. § 1692e(3), which prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney."[12]

The foundational case is *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).  In *Clomon*, the defendant worked as the part-time general counsel of a debt collection agency, and authorized the agency to send dunning letters bearing his name and a facsimile of his signature — even though he did not personally review either the individual letters or the files of the consumers to whom the letters were sent.  *Id.* at 1316. The Second Circuit concluded that the attorney thereby violated subsection 1692e(3) because "the collection letters were not 'from' [the defendant] in any meaningful sense of

---

[12] The concept of "meaningful involvement" is only pertinent to claims brought under subsection 1692e(3), not to subsection e(2) and e(10) claims, because the phrase has developed through courts' construction of the unique language of e(3).

that word." *Id.* at 1320. Driving this conclusion, in part, was the court's finding that the "use of an attorney's signature implies — at least in the absence of language to the contrary — that the attorney signing the letter formed an opinion about how to manage the case of the debtor to whom the letter was sent." *Id.* at 1321. This construction of subsection 1692e(3) has since been adopted by four other circuits. *See, e.g.*, *Lesher v. Law Offices of Mitchell N. Kay, P.C.*, 650 F.3d 993, 1003 (3d Cir. 2011); *Kistner v. Law Offices of Michael P. Margelefsky*, 518 F.3d 433, 438–41 (6th Cir. 2008); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1238 (5th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996). The Seventh Circuit explained the rationale for the doctrine this way: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up." *Avila*, 84 F.3d at 229.

The district court granted summary judgment to Nelson & Kennard on Tourgeman's claim under subsection 1692e(3). It assumed that the meaningful involvement doctrine was applicable, *see Tourgeman*, 2012 WL 3731807, at *6, perhaps because in an earlier decision in the case — when the action was before another district judge on Nelson & Kennard's motion to dismiss the complaint — that judge had adopted the doctrine. *See Tourgeman*, 2011 WL 3176453, at *8–9. In ruling on the summary judgment motion, however, the district court found it undisputed that the attorney who signed the collection letters was meaningfully involved, and granted judgment to Nelson & Kennard on the meaningful involvement claim. 2012 WL 3731807, at *6–7.

We need not determine whether to adopt a construction of section 1692e(3) that incorporates a requirement of meaningful involvement by an attorney who sends a dunning

letter.[13]  We have already concluded that Nelson & Kennard violated the FDCPA by including misleading references to American Investment Bank in both its letter to Tourgeman and in the state court complaint it filed against him.  These conclusions are sufficient to warrant both reversal of the judgment granted to Nelson & Kennard and entry of judgment in favor of Tourgeman.  Because "[v]iolation of a single [FDCPA] provision is sufficient to establish liability," *Gonzales*, 660 F.3d at 1064 n.6, we need not decide whether Nelson & Kennard also violated subsection 1692e(3) based on a lack of meaningful attorney involvement.[14]

## IV.  CONCLUSION

For the foregoing reasons, we conclude that the judgment of the district court granting judgment to Collins, Paragon Way, and Nelson & Kennard must be reversed, and that

---

[13] For this reason, we deny the motion of the National Association of Retail Collection Attorneys for leave to file an *amicus curiae* brief in support of the appellees.

[14] The only potential relevance of finding an additional violation could be with respect to calculating the amount of statutory damages to be awarded to Tourgeman.  *See Clark*, 460 F.3d at 1178 (concluding that "the fact that numerous violations of the FDCPA are predicated upon one set of circumstances *should* be considered and that it is best considered during the calculation of damages" (citing 15 U.S.C. § 1692k(a), (b))); *Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 n.5 (5th Cir. 2002).  Should there arise a dispute with respect to damages that implicates a need to decide Tourgeman's claim under 1692e(3), the district court presumably will adhere to the law of the case and apply the meaningful involvement doctrine.  But unlike the district court, we view the evidence to be equivocal as to what the attorney did or did not do before the firm sent the dunning letter; on this record, neither party would be entitled to summary judgment on this claim.

judgment should instead be entered for Tourgeman against Paragon Way and Nelson & Kennard. We express no view regarding whether Tourgeman is entitled to judgment against Collins itself, as Tourgeman's claims against that entity were based on a theory of vicarious liability that was neither decided by the district court nor briefed on this appeal. We remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

FARRIS, Circuit Judge, dissenting:

I respectfully dissent. As I view the record, the trial court got it right. I would affirm.